FILED

2011 Mar-08  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY NIX, et al., | ] |
| | ] |
| Plaintiffs, | ] |
| | ] |
| vs. | ] 2:10-CV-00303-LSC |
| | ] |
| STATE FARM FIRE & CASUALTY | ] |
| INSURANCE COMPANY, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant State Farm Fire and Casualty

Company's ("State Farm") motion for partial summary judgment (Doc. 13),

and motion for summary judgment on Plaintiffs' breach of contract claim

(Doc. 25).  The plaintiffs, Terry Nix and Amy Sheree Nix, filed suit against

State Farm for bad faith failure to pay an insurance claim; breach of

contract; and negligent, wanton, or intentional (bad faith) failure to

investigate.  On April 2, 2010, the Court dismissed Plaintiffs' negligent or

wanton investigation claim.  (Doc. 8.)  State Farm moved for summary

judgment on Plaintiff's claims of bad faith failure to pay and bad faith failure to investigate prior to the close of discovery.  (Doc. 13.)  After discovery was complete, Defendant moved for summary judgment on Plaintiff's contract claim.  (Doc. 25.)  The issues raised in Defendant's motions have been briefed by both parties and are ripe for decision.  Upon full consideration, Defendant's motions will be granted in all respects.

II.    Facts.[1]

Plaintiffs Terry Nix and Amy Sheree Nix own a home in Parrish, Alabama.  During the time period at issue, Plaintiffs held State Farm Homeowners Policy No. 01-EK-1691-4 ("the Policy"), which insured that home.

On November 10, 2009, part of a retaining wall in the basement of Plaintiffs' home "collapsed."  (Doc. 24 at 2 ¶3; Doc. 25, Attach. 1 at 4 ¶ 5;

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).)

Doc. 26 at 1 ¶ 5.)  Terry Nix reported the claim to State Farm around 9:00

p.m. that day; he stated that no one was home when the wall collapsed.

The Policy provides the following coverage for "Collapse."

> **Section I- Additional Coverages**
> . . .
>
> 11.   **Collapse.**  We insure only for direct physical
> loss to covered property involving the sudden,
> entire collapse of a building or any part of a
> building.
>
> Collapse means actually fallen down or fallen
> into pieces.  It does not include settling,
> cracking, shrinking, building, expansion,
> sagging or bowing.
>
> The collapse must be directly and immediately
> caused only by one or more of the following:
>
> a.   perils described in **SECTION 1- LOSSES
> INSURED, COVERAGE B- PERSONAL PROPERTY**.
> These perils apply to covered building and
> personal property for loss insured  by this
> Additional Coverage;
>
> b.   hidden decay of a supporting or weight-bearing
> structural member of the building;
>
> c.   hidden insect or vermin damage to a structural
> member of the building;

      d.    weight of contents, equipment, animals or people;

      e.    weight of ice, snow, sleet or rain which collects on a roof; or

      f.    use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

(Policy at 6 ¶11.)   The perils listed in **"SECTION 1- LOSSES INSURED, COVERAGE B- PERSONAL PROPERTY"** include:

      1.    Fire or Lightening.

      2.    Windstorm or hail. . . .

      3.    Explosion.

      4.    Riot or civil commotion.

      5.    Aircraft, . . . .

      6.    Vehicles, . . . .

      7.    Smoke, . . . .

      8.    Vandalism or malicious mischief, . . . .

      9.    Theft, . . . .

      10.    Falling objects. . . .

11.　Weight of ice, snow or sleet . . . .

12.　Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

　　This peril does not include loss:

　　a.　to the system or appliance from which the water or steam escaped;

　　b.　caused by or resulting from freezing;

　　c.　caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pup, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

　　d.　caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13.　Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or

automatic fire protective sprinkler system, or an appliance for heating water. . . .

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance. . . .

15. Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. . . .

16. Breakage of glass, . . . .

(*Id*. at 7-9.)  Elsewhere, the Policy reads: "We insure for accidental direct physical loss to [the Dwelling], except as provided in **SECTION I- LOSSES NOT INSURED**."  (*Id*. at 7.)  These losses are as follows:

**Section I- LOSSES NOT INSURED**

1. We do not insure for any loss to the property described in Coverage A [("Dwelling")] which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I- ADDITIONAL COVERAGES, Collapse**

. . .

2.   We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

(c)   Water Damage, meaning:

(1)   flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2)   water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface waters which is drained from the foundation area; or

(3)   water below the surface of the ground, including water which exerts pressure on,

or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

. . .

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . .

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance of any property (including land, structures, or improvements of any kind) whether on or off the residence premises. . . .

(*Id*. at 9-11.)

Crystal Worth ("Worth"), a State Farm claim representative, inspected the damage at Plaintiffs' home on November 13, 2009.  The inspection showed that: (1) a portion of the basement retaining wall had collapsed; (2) a water line had burst; (3) some flooding had occurred in the basement; and (4) the main floor of the home had cracking in the walls of some rooms. Worth took photographs of the damage, prepared diagram drawings of the home, and informed Terry Nix that State Farm would retain an engineer to determine the cause of the damage.  Worth also informed Terry Nix that there were questions concerning the coverage of the loss and a reservation of rights letter would be sent to him by certified mail.

Worth authorized Plaintiffs to make temporary repairs to shore up the structure.  State Farm agreed to pay for the cost of those temporary repairs, regardless of whether the damage was ultimately covered under the Policy. On or around November 14, 2009, Doug Channell ("Channell") of H&C Construction prepared an estimate for Terry Nix of the cost of temporary repairs.  On the top of the estimate, Channell wrote, "water damage from water line."  (Doc. 25, Nix Dep. at Def. Ex. 5.)  Channell subsequently performed repairs to prevent further collapse.

State Farm retained an engineering firm, EFI Global, on November 16, 2009, to inspect Plaintiffs' property damage.  State Farm sent a reservation of rights letter to Plaintiffs on November 17, 2009.

Mark Voll ("Voll"), an Alabama-licensed professional engineer employed by EFI Global, investigated the damage to Plaintiffs' retaining wall on November 17, 2009.  Terry Nix was present during the investigation.  Voll provided State Farm with an oral report on November 20th.  In his oral report, Voll concluded that the retaining wall collapsed due to improper construction and poor design.  Worth subsequently called Terry Nix and informed him that based on Voll's oral report, the insurance claim would be denied after State Farm received and reviewed the written report.  That same day, State Farm mailed Plaintiffs a draft for the temporary repairs.

State Farm received Voll's written report on December 2, 2009.  In the written report, Voll wrote: "Therefore, it is the opinion of EFI Global that the wall collapsed because it was improperly designed and built.  The heavy rains that day [(November 10, 2009)] saturated the soil which increased the hydrostatic lateral load on the wall until it collapsed." (Doc. 13, Def. Ex. 2-C at 1.)  Voll also opined that "when the improperly designed wall collapsed

from hydrostatic pressure, the wall pulled at the [water] pipe as it collapsed, breaking it." (*Id*. at 4.)  Voll concluded that "even if the water line had broken and somehow saturated the soil behind the wall, a properly designed and built wall would not have collapsed." (*Id*.)

On December 15, 2009, State Farm mailed Plaintiffs a denial letter and a copy of Voll's report.  The denial letter cites Voll's report and reads: "The collapse of the basement foundation wall was caused by improper construction and hydrostatic pressure." (Doc. 13, Def. Ex. 2-E at 1.)  State Farm's letter also recited the provisions in the Policy upon which they based their denial and informed Plaintiffs that if they had additional information that had not been considered, to contact State Farm at the listed number. Plaintiffs did not provide additional information regarding their claim.

Plaintiffs sued State Farm for bad faith failure to pay an insurance claim; breach of contract; and negligent, wanton, or intentional (bad faith) failure to investigate.  Plaintiffs contend that a broken main water line into the basement—not soil soaked by rain and improper construction—caused the retaining wall to fall.  Plaintiffs support this theory with the opinion testimony of Channell, and contend that damage caused by a broken main

water line is covered under the Policy.

III.    Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

    A.   Breach of Contract.

"A contract of insurance, like other contracts, is governed by the general rules of contracts."  *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (citing *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337 (Ala. 1993)).  The material elements necessary to establish a cause of action for "breach of contract" under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing *State*

*Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

Defendant contends that Plaintiffs have not produced sufficient evidence to establish coverage under the Policy.  Plaintiffs argue that they have shown that an insurance policy was in place during the time period at issue—and that insurance policy provides coverage for "accidental direct physical loss to the [Dwelling], except as provided in SECTION I- LOSSES NOT INSURED."  (Doc. 26 at 5; Policy at 7.)  Plaintiffs maintain that the burden of proof rests with the insurer to establish that an exclusion applies.  (Doc. 26 at 7.)

"Insurance companies are entitled to have their policy contract enforced as written."  *Twin City Fire Ins. Co.*, 817 So. 2d at 691 (citing *Gregory v. W. World Ins. Co.*, 481 So. 2d 878 (Ala. 1985)).  "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions."  *Id.* (quoting *Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996)).  "If an insurance policy is clear and unambiguous in its terms, then there is no

question of interpretation or construction." *Id.* at 692 (citing *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226 (Ala. 1997)).

Plaintiffs have the ultimate burden to establish that their claim is one that is covered by the terms of the Policy. *Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co.*, 99 So. 787, 790 (Ala. 1924); *McConnell-White-Terry Realty & Ins. Co. v. Fidelity & Deposit Co. of Md.*, 102 So. 617, 619 (1925) ("[T]he terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms."). If coverage is established and the insurer insists that an exclusion applies, "the insurer bears the burden of proving the applicability of [that] policy exclusion." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (citing *Fleming v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975)). However, the insurer's burden to prove the applicability of an exclusion does not "shift[] the general burden of proof from plaintiff to defendant." *Belt Auto. Indem. Ass'n,* 99 So. at 790. "[W]hen the defendant has offered evidence showing prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff." *Id.*

It is undisputed that Plaintiffs seek coverage related to the "collapse" of their basement retaining wall.  (Compl. ¶¶ 4-5; Doc. 24 at 2 ¶3; Doc. 25, Attach. 1 at 4 ¶ 5; Doc. 26 at 1 ¶ 5.)  Plaintiffs, therefore, have the burden to show that the "collapse" is covered.  Insured "collapses" are described under "SECTION I- ADDITIONAL COVERAGES."[2]  (Policy at 5-6.)  Plaintiffs have not proffered any evidence that their retaining wall collapsed due to hidden decay; hidden insect or vermin damage; weight of contents, equipment, animals, or people; weight of ice, snow, sleet, or rain on a roof; use of defective materials or methods during the course of construction; fire or lightening; windstorm or hail; explosion; riot or civil commotion; aircraft; vehicles; smoke; vandalism or malicious mischief; theft; falling objects; weight of ice, snow, or sleet; freezing; sudden and accidental damage to electrical devices; breakage of glass; or the "sudden and accidental tearing

---

[2]Plaintiffs read the Policy to say that coverage for their loss is established first under the general provision providing for insurance for "accidental direct physical loss to the [Dwelling], except as provided in SECTION I- LOSSES NOT INSURED."  (*Id*. at 7.)  They argue that the burden is then on the defendant to prove that their loss is not insured.  However, one of the "LOSSES NOT INSURED," is "collapse, except as specifically provided in SECTION I- ADDITIONAL COVERAGES, Collapse." (*Id*. at 9.)  Because it is undisputed that the loss at issue in this case is a "collapse," defendant has fulfilled its burden to show, prima facie, that this loss is one of nonliability.  *See Belt Auto. Indem. Ass'n*, 99 So. at 790.  Plaintiffs are left to establish that their "collapse" is covered.

asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water." (Policy at 5-9.)

Plaintiffs do offer the testimony of Channell, the individual who performed temporary repairs on the retaining wall. Channell testified that it was his opinion that the retaining wall collapsed because the main line water pipe burst. (Channell Dep. at 12.) Plaintiff Terry Nix also expressed his belief that the broken water pipe caused the retaining wall to collapse. If a broken main water pipe caused the collapse at issue, a jury could conclude that the damage was covered under the Policy as a collapse caused by a "[s]udden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective system, or from a household appliance." (Policy at 8 ¶12.) However, it is Plaintiffs' position that "[n]either [the opinion of Channell nor the opinion of Terry Nix] are expert opinions and [they] have not been offered as such." (Doc. 26 at 6.) If neither Channell nor Terry Nix are experts, then their testimony is generally admissible only as it involves their first-hand knowledge of the collapse and their actual observations of the damage. *See*

Fed. R. Evid. 701.  Plaintiffs have not argued that Channell and/or Terry Nix have any scientific, technical, or other specialized knowledge to give a reliable (expert) opinion on the cause of the collapse at issue when neither individual witnessed the collapse.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993).  Consequently, Plaintiffs have no evidence that the "collapse" in question was caused by a broken main water pipe and is covered under the Policy.  Without evidence that their loss is covered by the Policy, Plaintiffs cannot show Defendant breached the terms of the Policy by refusing to pay their claim.  Therefore, summary judgment is due to be entered in favor of the defendant with regard to Plaintiffs' breach of contract claim.

Even if this Court assumes that Plaintiffs have presented sufficient evidence establishing that the retaining wall collapsed due to a "sudden and accidental discharge" of water from the main water line, both Channell and Terry Nix testified that the alleged break in the line was underground. (Channell Dep. at 33-34; Nix Dep. at 97.)  The Policy provides:

> 2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not

insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

(c) Water Damage, meaning:

. . .

> (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

(Policy at 10.)  This language excludes damage to Plaintiffs' covered property caused by water pressure from an *underground* break in a main water line. Accordingly, summary judgment will be entered in favor of the defendant on Plaintiffs' breach of contract claim.

Plaintiffs admit that "if there is no breach of contract claim, there can be no bad faith failure to pay or investigate."  (Doc. 32 at 10.)  Therefore, summary judgment is due to be entered against Plaintiffs with regard to their remaining claims.  However, out of an abundance of caution, the Court will

briefly address the merits of both claims.

      B.     Bad Faith Refusal to Pay.

In order to establish a claim of bad faith refusal to pay under Alabama law, a plaintiff must show: "(1) an insurance contract between the parties and a breach thereof by the defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of *any* reasonably legitimate or arguable reason for that refusal; and (4) the insurer's *actual knowledge* of the absence of any legitimate or arguable reason." *Hall v. Amer. Indem. Group*, 648 So. 2d 556, 559 (Ala. 1994) (emphasis added). "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal.'" *Nat'l Sec. Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982). In fact, a plaintiff's burden is so heavy that, in order "to make out a prima facie case[,] . . . . the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *Nat'l Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the

validity of the claim and thus, the legitimacy of the denial thereof, the tort claim must fail."   *Id*.

It is undisputed that State Farm hired EFI Global to conduct an investigation of the damage to Plaintiffs' property.  State Farm received the oral and written reports of Voll, an Alabama-licensed professional engineer employed by EFI Global, and relied upon those reports in its denial of Plaintiffs' insurance claim.  Even if the Court assumes, as Plaintiffs contend, that Voll is not completely credible and/or his opinions are scientifically flawed, there is no evidence that State Farm knew or should have known that Voll's conclusions were faulty or lacked credibility.  Plaintiffs broadly attack Voll's methodology and findings as unworthy of "expert" status, but they do not present any reliable evidence establishing that his opinion was not a fairly debatable reason for the denial of Plaintiffs' claim.

Plaintiffs have not produced evidence to eliminate "any arguable reason" for State Farm denying payment.  There is no evidence that State Farm denied Plaintiffs' claim with the actual knowledge that the basis for the denial was false.  And, as outlined above, there is insufficient evidence to establish that State Farm breached their insurance contract with the

plaintiffs.  Consequently, summary judgment is due to be granted in favor of the defendant on Plaintiffs' claim of bad faith refusal to pay.

      B.    Bad Faith Failure to Investigate.

If a plaintiff fails to establish a "normal" case of bad faith refusal to pay an insurance claim, a plaintiff may "prove that the insurer's failure to investigate at the time of the claim presentation procedure was intentionally or recklessly omissive."  *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006) (quoting *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998)).   In order to recover under this "abnormal" theory of "bad-faith failure to investigate an insurance claim, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim."  *Id.* (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 318 (Ala. 1999)).   "Practically, the effect is that in order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract."  *Id.* (quoting

*Slade*, 747 So. 2d at 318).

Plaintiffs concede that State Farm took photographs, prepared diagram drawings of the home, and retained an engineer to determine the cause of the damage to their retaining wall.  The engineer issued both an oral and written report concluding that the retaining wall collapsed due to improper design and construction and hydrostatic pressure caused by rain water. Plaintiffs have not produced any evidence that shows a "proper investigation" would have shown that their loss was covered under the terms of the contract.  As outlined previously, there is insufficient evidence to establish that State Farm breached its insurance contract with the plaintiffs when it denied their claim.  Therefore, summary judgment will be entered in favor of the defendant.

V.    Conclusion.

For the reasons stated, Defendant's motions for summary judgment will be granted in all respects. A separate order will be entered.

Done this 8th day of March 2011.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297